```
HOBBS
STRAUS
DEAN &
WALKER
```

1899 L Street, NW, Suite 1200    T 202.822.8282    HOBBSSTRAUS.COM
Washington, DC 20036    F 202.296.8834

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _6/16/2026_

June 15, 2026

**Via CM/ECF and Email**

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007
ChambersNYSDMarrero@nysd.uscourts.gov

Motion DENIED. After consideration of the
arguments presented below, the Court finds the
request made by the Tribal Amici untimely.

SO ORDERED.

Dated: June 16, 2026
       New York, New York

Victor Marrero
U.S.D.J.

Re:    *United States of America v. State of New York*, Case No. 1:26-cv-3404

Dear Judge Marrero:

I write as counsel for a group of tribes and tribal organizations (collectively, the "Tribal Amici"[1]) to respectfully request the Court's permission to file an *amicus* brief in support of the State of New York's response opposing the Commodity Futures Trading Commission's ("CFTC") motion for a preliminary injunction in the above-referenced action.  A copy of the Tribal Amici's amicus brief is attached hereto as Exhibit A.

---

[1] The Tribal Amici include: The Indian Gaming Association ("IGA"), National Congress of American Indians ("NCAI"), United South and Eastern Tribes Sovereignty Protection Fund ("USET SPF"), Arizona Indian Gaming Association ("AIGA"), California Nations Indian Gaming Association ("CNIGA"), Minnesota Indian Gaming Association ("MIGA"), Oklahoma Indian Gaming Association ("OIGA"), Washington Indian Gaming Association ("WIGA"), National Tribal Gaming Commissioners & Regulators ("NTGCR"), Native American Finance Officers Association ("NAFOA"), San Manuel Gaming and Hospitality Authority ("SMGHA"); Agua Caliente Band of Cahuilla Indians; Bay Mills Indian Community; Elk Valley Rancheria; Hannahville Indian Community; Iowa Tribe of Oklahoma; Grand Traverse Band of Ottawa and Chippewa Indians; Jamestown S'Klallam Tribe; Jamul Indian Village of California; Karuk Tribe; Kickapoo Traditional Tribe of Texas; Lytton Rancheria; Mashantucket Pequot Tribal Nation; Mohegan Tribe of Indians of Connecticut; Morongo Band of Mission Indians; Nottawaseppi Huron Band of Potawatomi; Oneida Nation; Pechanga Band of Indians; Pueblo of Acoma; Pueblo of Sandia; Rincon Band of Luiseño Mission Indians; Santa Ynez Band of Chumash Mission Indians; Santa Rosa Rancheria Tachi Yokut Tribe; Seminole Tribe of Florida; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract); Spokane Tribe of the Spokane Reservation; Table Mountain Rancheria; Wilton Rancheria; Yavapai-Apache Nation; and Yuhaaviatam of San Manuel Nation.

June 15, 2026
Page 2

## I.      Tribal Amici's Interest

IGA is an inter-tribal non-profit organization comprised of 124 federally recognized Indian Tribes that operate gaming enterprises throughout Indian Country.  IGA's mission is to advance tribal economic, social, and political interests, and to preserve and promote tribal sovereignty, self-sufficiency, and economic development by advocating for tribally owned governmental gaming enterprises.  IGA operates as an educational and public-policy resource for tribes, policy makers, and members of the public concerning Indian gaming issues and tribal community development.

NCAI is the oldest and largest national organization comprised of American Indian and Alaska Native tribal governments and their citizens.  Since 1944, NCAI has advised and educated the public, Tribal Nations, state governments, and the federal government on a broad range of issues involving tribal sovereignty, self-government, treaty rights, and policies affecting Tribal Nations, including jurisdiction, taxation, and gaming issues.  NCAI currently represents more than 275 tribal nations.  NCAI works daily to strengthen the ability of tribal nations to ensure the health and welfare of their communities.

AIGA is a non-profit association comprised of eight federally recognized Tribes.  AIGA is committed to protecting and promoting the welfare of tribes striving for self-reliance by supporting tribal gaming enterprises on Arizona Indian lands.  AIGA provides educational, legislative, and public policy resources for tribes, policymakers, and the public on Indian gaming issues and tribal community development.

CNIGA is a non-profit organization that represents 54 federally recognized tribal governments located within the State of California.  CNIGA acts as a planning and coordinating agency for legislative, policy, legal, and communications efforts on behalf of its members, especially with respect to gaming-related matters.

MIGA was founded in 1987 to bring member tribes together to educate Minnesotans about the impacts of tribal gaming and to speak with a unified voice on public policy matters.  MIGA is currently comprised of elected leaders from nine of the eleven federally recognized Indian tribes in Minnesota.  MIGA continues to support and advocate for tribal gaming operations while also defending against the off-reservation expansion of gaming.

OIGA is a non-profit organization of Indian Nations and other non-voting members representing organizations, tribes, and businesses engaged in tribal gaming enterprises in Oklahoma.  OIGA's mission is to promote the general welfare of the Oklahoma Indian Tribes through the development of sound policies and practices with respect to the conduct of gaming enterprises in Indian Country.  OIGA's purpose is to educate and disseminate information to tribal, federal, and state governments and the general public on issues relating to tribal gaming.

WIGA is a non-profit organization of tribal government leaders representing 23 federally recognized Indian tribes in the State of Washington. WIGA's purpose is to educate and disseminate information to the Indian gaming community, federal and state governments, and the

June 15, 2026
Page 3

general public concerning issues related to gaming in Indian Country. WIGA advocates on behalf of Washington's Indian gaming community to promote government relations and effective communication between tribes and the State of Washington.

NAFOA is a national non-profit organization of tribal officers, controllers, treasurers, accountants, auditors, and financial advisors.  NAFOA's mission is to foster development of financial and business expertise among tribal governments and their businesses by providing educational forums and resources, and by instilling finance and accounting best practices.

NTGCR is a national non-profit trade organization established to serve as a unified voice for tribal regulators and to promote consistent regulatory standards across Indian Country. NTGCR's mission is to empower tribal gaming regulators through education, collaboration, and regulatory enforcement enhancements.

USET SPF is a non-profit, inter-Tribal organization advocating on behalf of 33 federally recognized Tribal Nations from the Northeastern Woodlands to the Everglades and across the Gulf of Mexico.  USET SPF works at the regional and national level to educate federal, state, and local governments about the unique historic and political status of its member tribal nations.

SMGHA is a governmental instrumentality of Yuhaaviatam of San Manuel Nation created for the purpose of independently carrying out the investment in, and ownership and management of, gaming and hospitality businesses outside of the San Manuel Reservation.

The 30 tribes included among the Tribal Amici ("Amici Tribes") are federally recognized Indian Tribes within the meaning of the Indian Gaming Regulatory Act ("IGRA").  *See* 25 U.S.C. § 2703(5).  Each of the Amici Tribes is a separate and distinct tribal government with the sovereign authority to conduct and regulate gaming activities on its Indian lands.  The Amici Tribes all have a direct and immediate interest in maintaining their sovereign rights over gaming, including sports betting, on their Indian lands.

Together, the Tribal Amici all have a shared, strong interest in this case because of its potential to have a significant impact on their or their member tribes' rights regarding gaming on Indian lands, as well as Indian gaming and tribal governmental revenue as a whole.  Such revenue is vital and provides funding for essential government services, tribal programs, and economic development needed to reach the goals of self-governance and self-sufficiency.

## II.    ARGUMENT

The Local Rules for this Court do not provide the procedure for or address the propriety of amicus briefs.  *See generally* Local Rules for the United States District Court for the Southern and Eastern Districts of New York (Jan. 2, 2025).  That said, district courts have "broad discretion to permit or deny the appearance of *amici curiae* in a given case," *United States v. Yaroshenko*, 86 F.Supp.3d 289, 290 (S.D.N.Y. 2015) (internal quotations omitted), and courts in this district have frequently permitted amici to participate in its proceedings.  *See, e.g., Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832-AT, 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021); *C & A Carbone, Inc. v. Cnty. of Rockland*, No. 08-cv-6459-ER, 2014 WL

June 15, 2026
Page 4

1202699, at *3 (S.D.N.Y. Mar. 24, 2014). "An *amicus* brief should normally be allowed when ... the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Automobile Club of N.Y., Inc. v. Port Authority of N.Y. & N.J.*, No. 11-cv-6746-RJH, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) (internal quotations omitted). "The court is most likely to grant leave to appear as an *amicus curiae* in cases involving matters of the public interest." *Andersen v. Leavitt*, No. 03-cv-6115-DRH-ARL, 2007 WL 2343672, *2 (E.D.N.Y. Aug. 13, 2007). A request for leave to file an amicus brief is also timely "if the filing of an amicus brief would [not] cause a prolonged delay in the litigation." *Goldstein v. Hochul*, No. 22-cv-8300-VSB, 2022 WL 22915988, at *1 (S.D.N.Y. Oct. 19, 2022) (internal quotation marks and citations omitted).

Here, the proposed amicus brief is both timely and useful, and will aid the court in its deliberation of this matter by offering insights not available from the parties. First, this letter and the accompanying amicus brief are timely because they are filed within two weeks of the filing of Defendants' response to the CFTC's motion for preliminary injunction.[2]

Second, the proposed amicus brief is useful and aids this Court in its deliberation because it provides the Court with legal arguments and relevant context not raised by either party. In their response to the CFTC's motion for preliminary injunction, New York argues that the Commodity Exchange Act ("CEA") does not preempt New York's state gaming laws. Defs.' Opp. to CFTC Mot. for Prelim. Inj. at 12–30, Dkt. No. 56. While the Tribal Amici concur with and support the arguments advanced by New York, the arguments advanced in the proposed amicus brief present additional grounds as to why the CEA does not exclusively govern sports-betting contracts offered by designated contract markets ("DCMs"). The Court's decision in this matter will also impact tribes nationwide, including those in New York. The CFTC's arguments in this case, if taken as true, would necessarily mean that the CEA either preempts or impliedly repeals core aspects of IGRA. *See* CFTC Mem. of Law in Supp. of Mot. for Prelim. Inj. at 10–19, Dkt. No. 16. Such a holding would unquestionably impact all those tribes engaged in gaming (including sports betting) pursuant to an IGRA compact. *See Ho-Chunk Nation v. Kalshi Inc.*, No. 3:25-cv-00698-wmc, 2026 WL 1284077, at *10 n.5 (W.D. Wis. May 11, 2026). Additionally, the CFTC argues that DCMs must be allowed to provide their users "impartial access" to their "nationwide" exchanges under CFTC regulations. *See* CFTC Mem. of Law in Supp. of Mot. for Prelim. Inj. at 9–10, Dkt. No. 16 (citing 17 C.F.R. § 38.150). A decision in the CFTC's favor would mean DCMs' users must have unfettered access to the sports bets they offer across the United States, including not just in New York but also on tribes' Indian lands. As such, the Tribal Amici have a unique interest in the subject matter of this suit because it directly impacts tribal sovereignty over gaming that occurs on Indian lands, which is an important interest and adds a valuable perspective for the Court not advanced by either party.

---

[2] In addition, while counsel for the CFTC does not consent, counsel for potential intervenors Coinbase and Gemini take no position, and counsel for the State of New York takes no position.

**HOBBS STRAUS DEAN & WALKER, LLP**    WASHINGTON, DC | PORTLAND, OR | OKLAHOMA CITY, OK | SACRAMENTO, CA | ANCHORAGE, AK | CLINTON, NY

June 15, 2026
Page 5

## III.    CONCLUSION

For the foregoing reasons, the Tribal Amici respectfully requests that this Court grant its motion for leave to file in this case the amicus brief attached as Exhibit A hereto.

Sincerely,

/s/ Joseph H. Webster
Joseph H. Webster (*pro hac vice* forthcoming)
Hobbs, Straus, Dean & Walker LLP
1899 L Street NW, Ste. 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com

cc (by ECF and email):  All counsel of record
                        Elizabeth A. Bower
                        Jens W. Camp
                        Alexandra K. Holden
                        Scott Crowell
                        Bryan Newland
                        Michael Hoenig