# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA and COMMODITY FUTURES TRADING COMMISSION,<br><br>             Plaintiffs,<br><br>             v.<br><br>STATE OF NEW YORK, *et al.*,<br><br>             Defendants. | Case No. 1:26-cv-3404 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

**PRELIMINARY STATEMENT**

Plaintiffs the United States and the Commodity Futures Trading Commission ("CFTC" or "Commission") move the Court under Rule 65 of the Federal Rules of Civil Procedure for the entry of a temporary restraining order ("TRO") and preliminary injunction halting Defendants' increasingly aggressive attempts to assert jurisdiction over federally regulated interstate commodity derivatives markets, thereby unconstitutionally intruding on the exclusive regulatory jurisdiction granted to the CFTC under the Commodity Exchange Act ("CEA"). In support of their motion, Plaintiffs submit this memorandum of law and incorporate their previous motion for a preliminary injunction and supporting memorandum of law, Dkt. Nos. 34, 35.

Plaintiffs first moved for a preliminary injunction on May 1, 2026, following Defendants' initiation of civil enforcement proceedings against Coinbase Financial Markets, Inc., a CFTC-regulated futures commission merchant ("FCM"), and Gemini Titan, LLC ("Gemini"), a CFTC-regulated designated contract market ("DCM"), and Defendants' issuance of a cease-and-desist letter to KalshiEX ("Kalshi"), also a CFTC-registered DCM, alleging that Kalshi violated state gambling laws by offering sports event contracts without a sports gaming license. Dkt. No. 34.

Starting tomorrow, Defendants have free rein to follow through on their threats to subject CFTC-regulated entities to preempted state gambling regulations. *See KalshiEX LLC v. Williams*, No. 25-cv-08846-AT (S.D.N.Y.), Dkt. No. 110 at 1 n.1 (New York agreed not to take enforcement against DCM Kalshi only "up to and including July 30, 2026").

This overreach must be immediately enjoined. The event contracts offered directly by CFTC-regulated DCMs such as Kalshi and Gemini or through FCMs such as Coinbase—including event contracts where the underlying event relates to sports—are "swaps" under the plain meaning of the CEA. *See* Mem. in Supp. of Pls.' Mot. for Prelim. Inj., Dkt. No. 35 ("Mem.") at 12–14. As

such, the CFTC has "exclusive jurisdiction" over these contracts, which necessarily preempts New York's exercise of regulatory jurisdiction. *Id.* at 14–19; 7 U.S.C. § 2(a)(1)(A).

Indeed, just days ago, the District of Minnesota recognized the exclusive federal regulatory authority over these transactions, enjoining a Minnesota law that would have imposed criminal penalties for operating a prediction market. *See United States v. Minnesota*, No. 26-cv-2661, __ F. Supp. 3d ___, 2026 WL 2150211, at *1 (D. Minn. July 27, 2026); *see also* Pls.' Notice of Suppl. Authority, Dkt. No. 113. New York attempts to do what that court prohibited Minnesota from doing—using preempted state laws to shut down federally regulated markets.

Enforcement action by New York, including the use of extreme and punitive civil disgorgement measures, see *infra* 3, 7, will irreparably harm the CFTC and the markets that it regulates. *See KalshiEX LLC v. Johnson*, No. CV-26-01715, __ F. Supp. 3d ___, 2026 WL 1223373, at *9 (D. Ariz. May 5, 2026) ("[A] preliminary injunction would hold the State to the limits Congress set on its authority, while denying a preliminary injunction would undermine the uniform regime Congress entrusted to the CFTC."); *Minnesota*, 2026 WL 2150211, at *17. Kalshi's compliance, for example, with New York's demands "would require terminating trading for hundreds of thousands of users in New York, many of whom have open investments on the platform." Kalshi's Emergency Mot. for Inj. Pending Appeal at 23, *KalshiEX LLC v. Williams*, No. 26-1835 (2d Cir. July 23, 2026), Dkt. No. 27 ("Kalshi Mot."). Those enforcement actions by the State, particularly if duplicated against other DCMs and FCMs, would essentially nullify the CEA as to swaps traded on CFTC-regulated exchanges within New York.

As recent events in Michigan demonstrate, it is impossible for DCMs to comply with both federal law and state enforcement of casino gambling regulations. *See* CFTC, *Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving*

2

*Michigan Residents*, (July 14, 2026) ("CFTC Kalshi Order").[1] Given the volume of event contract trading in New York, and the location of many market participants' headquarters in the State, the disruption to the CFTC's regulated markets threatens to overwhelm those markets nationwide. This threat exists separately and apart from the harm arising from the penalties Kalshi, Coinbase, Gemini, and other CFTC-regulated entities face, which could include civil and criminal liability and "disgorgement of [their] net profits attributable to the entirety of [their] U.S. sales." *See Federal Trade Comm'n v. Vyera Pharm.*, No. 20-cv-00706, 2021 WL 4392481, at *4 (S.D.N.Y. Sept. 24, 2021) (Cote, J.); Complaint ¶ 13, *New York v. Gemini Titan, LLC*, No. 1:26-cv-03318 (Apr. 22, 2026), Dkt. No. 1-1 (seeking "disgorgement, damages, and penalties" and "three times the amount of [Gemini's] gain") (pending motion to remand). Altogether, allowing New York to enforce its gambling laws against CFTC-regulated DCMs and FCMs has the potential for a single state to bring entire federally regulated markets to the brink of destruction. The Supremacy Clause bars that result.

Immediate relief is warranted to ensure that the CFTC can carry out its statutory mandate. The Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunction.

**ARGUMENT**[2]

## I. New York's application of its state laws is preempted by the CEA

The federal government is likely to succeed in establishing that federal law preempts New York law as to commodity derivatives transactions on CFTC-regulated DCMs. *See* Mem. at 10–19. Subjecting the national event-contracts market to a patchwork of 50 state regulations is

---

[1] https://www.cftc.gov/filings/documents/2026/orgcftcorderstayingkalem61407.pdf.

[2] Plaintiffs repeat their arguments in their motion for a preliminary injunction, Dkt. No. 35, and supplement those arguments here in support of the emergency relief plaintiffs now seek.

precisely what Congress sought to avoid when it passed the CEA and subsequently amended it to enhance its preemptive effect. *See* Mem. at 14–16.

### A. The CEA expressly preempts New York law as applied to event contracts

The CEA grants the CFTC "exclusive jurisdiction" over transactions involving swaps traded on DCMs. 7 U.S.C. § 2(a)(1)(A). As an initial matter, event contracts are swaps—as the District of Minnesota held earlier this week. Quoting from the Second Circuit, the court recognized that "[t]he CEA's definition of 'swap' is broad." 2026 WL 2150211, at *12 (quoting *United States v. Phillips*, 155 F.4th 102, 113 (2d Cir. 2025)). In particular, the use of the terms "associated with" and "potential" in the swap definition "reflects congressional intent to define 'swap' somewhat broadly and to extend the CFTC's exclusive regulatory authority to cover many transactions and agreements." *Minnesota,* 2026 WL 2150211, at *12 (internal citations omitted)*.* And the statutory Special Rule confirms that "Congress intended DCM-based transactions over these prediction markets to be governed by the CFTC." *Id.* at *13 (internal citations omitted).

The CFTC's "exclusive jurisdiction" over these swaps preempts state law. *See* Mem. 14–16; *Minnesota*, 2026 WL 2150211, at *10–15. As the District of Minnesota explained, the CEA's grant of "exclusive jurisdiction" over "transactions involving swaps that are traded on DCMs" "reflect[s] congressional intent to give the CFTC the power over transactions in swaps that is independent from or not shared by other authorities," including state gambling regulators. 2026 WL 2150211, at *10. Again, citing the Second Circuit, it noted that "courts have recognized that § 2(a)(1)(A)'s 'exclusive jurisdiction' language has a preemptive effect on state regulation."[3] *Id.* at *10 (citing *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980)). And "[w]hile § 2(a)(1)(A)

---

[3] The Eastern District of Wisconsin recently disagreed. *See CFTC v. Wisconsin*, 2:26-cv-00749 (July 29, 2026). That court, however, did not cite *Leist* en route to the erroneous conclusion that "the CEA's grant of 'exclusive jurisdiction' applies to the CFTC in contrast to other agencies, not in contrast to other laws." *Id.* at 22.

contains two savings clauses, these clauses do not appear to reserve to the states the power to regulate transactions involving swaps that take place on DCMs." *Id.* at \*11.

New York's enforcement action would not undercut that exclusive jurisdiction; it would destroy it. The nation's largest operators of prediction markets, including Kalshi, Polymarket US, and Gemini, are headquartered in New York. If the State of New York is permitted to seek injunctions or industry-crippling damages against these markets, it could shutter their operations—not only in the State itself, but nationwide. That outcome—allowing a *State* to dictate the operation of a *national* exchange—would completely turn the CEA on its head. *See* H.R. Rep. No. 93-1383, at 35–36 (1974) (Conf. Report) (explaining that the "exclusive grant of jurisdiction to the Commission" would "preempt the field insofar as futures regulation is concerned," and that "if any substantive State law regulating futures trading was contrary to or inconsistent with Federal law, the Federal law would govern"); S. Rep. No. 93-1131, at 6 (1974) (stating that the Commission's "jurisdiction, where applicable, supersedes State as well as Federal agencies").

### B. New York law is conflict preempted by the CEA[4]

The CEA also preempts New York's application of its gambling laws to DCMs because "[o]ffering event contracts on a DCM cannot, in and of itself, be an activity that is unlawful under any state law." Mem. at 18. If that were the case, "such an application of state law would conflict with the CEA," which makes it lawful to list event contracts on DCMs unless the Commission determines otherwise. *Id.*; *see* 7 U.S.C. § 7a-2(c)(5)(C).

Recent events confirm that the application of state gambling law against CFTC-regulated exchanges irreconcilably conflicts with the CEA and its administration by the Commission. When a Michigan state court ordered Kalshi to unwind previously executed trades involving Michigan

---

[4] Plaintiffs maintain that New York's application of its gambling laws to event contracts on a DCM is also field-preempted by the CEA. *See* Mem. at 16–17.

residents, the CFTC explained that allowing Kalshi to do so "would risk shattering public confidence by giving traders cause to worry that the trades they execute today may be unwound a week—or a year—later." CFTC Kalshi Order, at 7. Moreover, the Commission continued, if derivatives products "must price in the possibility of being unwound by judicial order"—or upon a State's demand—"then the market's core price discovery function will be undermined," leading to "additional trading to counteract unexpected exposure, unnatural trading activity based on assumptions that future trades may be unwound; and a spectrum of different, and competing, assumptions about the fair prices of contracts." *Id.* at 8. To ensure the integrity of its markets, the Commission exercised its emergency power and ordered Kalshi to "fulfill the trades in question in accordance with its normal practices." *Id.* at 1. That is a head-on conflict between state and federal law. Under the Supremacy Clause, state law must give way.

If New York demands that DCMs unwind trades, it would—like the Michigan court—subject exchanges to a situation where they would have to choose between violating state law or violating federal law, only on an exponentially larger scale. Again, given that many prediction-market operators are headquartered in New York, the State could potentially attempt to require them to unwind all outstanding trades nationwide. Given that several billion dollars in monthly volume trade on these markets, that would cause staggering market instability and may require the CFTC to take emergency action, as it did in Michigan. This basic conflict between state and federal law can and should be enjoined immediately to preserve the status quo.

## II.      A TRO is necessary to prevent irreparable harm to the federal government

The federal government suffers irreparable harm "when its valid laws in a domain of federal authority are undermined by impermissible state regulations." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012). Here, New York's attempt to enforce preempted state

regulations does not merely "undermine[ ]" federal authority—it squashes it. As Kalshi has explained, compliance with the State's demands "would require terminating trading for hundreds of thousands of users in New York, many of whom have open investments on the platform." Kalshi Mot. at 23. As asserted above, such action would raise the same market-distortion concerns as the Michigan state-court order, but on a substantially wider scale that may require the CFTC to exercise its emergency authority.

The harms facing CFTC-regulated exchanges, moreover, directly hinder the CFTC's exclusive authority to regulate its markets. *See Minnesota*, 2026 WL 2150211, at *17 ("Infringement on [the CFTC's] exclusive authority can be irreparable harm."). *First*, as the District of Minnesota noted, "the negative effects attendant to a prosecution under a state criminal statute … preempted by federal law are fairly obvious." *Id.* at *16. If New York can pursue enforcement against Kalshi and other DCMs and FCMs, "the DCMs [and FCMs] will either continue to offer their event contracts to [New York] users and face potential [criminal] charges, or they will need to take steps to exit the market for their trades in" New York. *Id.* And "cancel[ing]" New York "users' trades … would erode confidence of users," disrupting the broader event-contract market that the CFTC regulates. *Id.* at *17. *Second*, if New York seeks "disgorgement of [Kalshi's] net profits attributable to the entirety of its U.S. sales," *Vyera Pharm.*, 2021 WL 4392481, at *4, that would deter any DCM offering an event contract for trading, essentially eviscerating the very marketplace Congress has tasked the CFTC with regulating. *See* New York Executive Law 63(12) (giving the New York Attorney General discretion to seek "restitution and damages" based on "repeated fraudulent or illegal acts").

7

### III.    The balance of equities weighs in favor of a TRO

The balance-of-equities and public-interest factors favor interim relief, as a preliminary injunction "strikes the right balance of harms while preserving the status quo." *Minnesota*, 2026 WL 2150211, at \*17. If the State ultimately prevails on the merits, it could at that time enforce its gambling laws, and it will have suffered no lasting damage from having been temporarily enjoined during the pendency of the case. By contrast, if federal plaintiffs prevail on the merits, the status quo must be preserved now. DCMs "could face substantial liability to [New York] traders if they are forced to cancel [New York] trades. And even if [the DCMs] ultimately prevail …, there is no way for [the DCMs] to recover damages from the State of [New York] because of [the State's] sovereign immunity." *Id.* at \*16 (citation omitted). And more broadly, enforcement against DCMs would "erode confidence of users in their platforms, potentially causing [New York] users and others to leave the platforms, and deterring new users from entering event contracts." *Id.* at \*17. This state of affairs would completely upend the purpose of the CEA's comprehensive federal regulatory regime.

### CONCLUSION

New York's escalation underscores the grounds for immediate emergency relief. The federal government respectfully asks that this Court grant its motion for a temporary restraining order and preliminary injunction. If the Court denies the federal government's request for a TRO, the federal government requests that the Court immediately rule on the pending motion for a preliminary injunction, Dkt. No. 34. If the Court does not decide this motion by August 7, the federal government may consider both motions to be constructively denied.

8

Dated: July 30, 2026

Respectfully submitted,

By: */s/ Andrew J. Weisberg*
Andrew J. Weisberg
Senior Assistant General Counsel
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581
Tel. (202) 418-5574
aweisberg@cftc.gov

*Attorneys for the United States of America*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the
Assistant Attorney General
450 5th St. NW
Washington, DC 20001
tiberius.davis@usdoj.gov
Tel. 202-860-8970

ALEXANDRA McTAGUE SCHULTE
Senior Litigation Counsel
alexandra.schulte@usdoj.gov
Tel. 202-718-0483

*Attorneys for the Commodity Futures Trading Commission*

TYLER S. BADGLEY
    General Counsel
M. JORDAN MINOT
    Deputy General Counsel
ANNE STUKES
    Senior Assistant General Counsel
CARLIN METZGER
    Senior Assistant General Counsel
ANDREW J. WEISBERG
    Senior Assistant General Counsel

U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Tel. 202-209-1087
Fax. 202-418-5567
tbadgley@cftc.gov
astukes@cftc.gov
cmetzger@cftc.gov
aweisberg@cftc.gov

9