

**Office of the New York State**
**Attorney General**

**Letitia James**
**Attorney General**

August 4, 2026

**By ECF**

The Hon. Victor Marrero
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, New York, NY 10007

   Re:  *United States v. State of New York*, 26-CV-3404
       Response to Plaintiffs' Notice of Supplemental Authority (ECF 113), As
       Authorized by ECF 117

Dear Judge Marrero:

  In July 2026, Plaintiffs and others obtained a preliminary injunction of Minnesota Statute §609.7615, which "prohibit[s] the creation, operation, and advertising of prediction markets." *United States v. Minnesota*, 2026 WL 2150211, at \*1 (D. Minn. July 27, 2026). *Minnesota* is not persuasive.

  ***First***, *Minnesota* repeatedly emphasized that it was only considering the brand-new wide-reaching Minnesota law completely banning prediction markets rather than preexisting state gaming laws like those at issue here. *Minnesota*, 2026 WL 2150211, at \*13 n.21, \*10 n.17, \*14 n.23.

  ***Second,*** *Minnesota*, in addressing express preemption (the only preemption theory it reached) applied a burden of "likely to prevail on the merits," *id*. at \*7 (quotation omitted), rather than "clear or substantial likelihood of success," *KalshiEX v. Williams*, 2026 WL 2017466 at \*4 (S.D.N.Y. July 13, 2026), a potentially dispositive difference.

  ***Third,*** *Minnesota's* interpretation of "swap" was flawed. The *Minnesota* defendants apparently did not "really take issue with the plain meaning of the words Congress used in § 1a(47)(A)(ii)." *Id.* at \*12. Defendants here, however, began with the text, and explained why the text favors their interpretation of swap, and not Plaintiffs'. (Opp. at 13–23.)

  While *Minnesota* conceded the operative "language reflects congressional intent to require some connection between the outcome of the event and a potential financial, economic, or commercial consequence," *Minnesota*, 2026 WL 2150211, at \*12, it nevertheless concluded, *without ever explaining why*, that some wagers, like who will "win the World Cup," meet the definition of "swap." *Id.* at \*14. This holding therefore seemingly buys into the kinds of remote and downstream externalities that cannot reasonably fall within the definition and that other courts correctly reject. (Opp at 14–15; *United States v. Wisconsin*, ECF 114 at 18-20.)

*Finally,* *Minnesota's* interpretation of CEA § 2(a)(1)(A) *inter alia* failed to consider the CEA's express preemption clauses (Section 16(e)(2) or 16(h)).  (Opp. at 24–28.)  *Williams's* conclusion that the CEA still "leave[s] room for states to regulate certain activities that may have otherwise been covered by the CEA," is more persuasive. and consistent with the growing weight of authority.  2026 WL 1961872, at \*7.  *See also QCX LLC v. Nessel,* 2026 WL 1895958, at \*9–10 (W.D. Mich. June 17, 2026).  And contrary to *Minnesota's* finding, "the Special Rule's plain text clearly reflects an affirmative intent to *preserve* state laws governing whether particular conduct is lawful or unlawful."  *Williams* 2026 WL 1961872, at \*7 (quotation omitted).

Respectfully submitted,

/s/ *Katherine Rhodes Janofsky*
KATHERINE RHODES JANOFSKY

cc (by ECF): All counsel of record

## WORD COUNT CERTIFICATION

In accordance with the Court's order ECF 117, I hereby certify this letter contains 400 words (including footnotes), exclusive of the address lines, case caption, salutation, memo line, and signature block, as established using the word court function of Microsoft Word.

*/s/Katherine Rhodes Janofsky*
KATHERINE RHODES JANOFSKY